## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS] Order re Claim Construction**

Fisher and Paykel Healthcare Limited ("FPH" or "Plaintiff") and Flexicare Incorporated ("Flexicare" or "Defendant") have submitted proposed claim constructions for claim terms in certain asserted patents in this case. See, e.g., Docket No. 71. Both parties have submitted opening and responsive claim construction briefs. FPH Op. Br., Docket No. 73; Flexicare Op. Br., Docket No. 75; FPH Resp. Br., Docket No. 78; Flexicare Resp. Br., Docket No. 81.

A hearing was held on the parties' claim construction disputes on January 13, 2020. Docket No. 92. At the hearing, the parties raised a dispute regarding a late-submitted evidentiary filing by Flexicare in support of its claim construction position for the claim term "without allowing the [passage/transmission] of liquid water or respiratory gases." The parties were directed to engage in supplemental claim construction procedures, including with the parties to file supplemental declarations from their experts and an option for Flexicare to subsequently take a deposition of FPH's expert. Docket No. 97. Flexicare's expert, Abraham, filed a supplemental declaration on January 23, 2020. Abraham Supp. Decl., Docket No. 98. FPH's expert, Geise, filed a supplemental declaration on February 3, 2020. Geise Supp. Decl., Docket No. 103. The parties did not notify the Court by the prescribed deadline that Flexicare intended to proceed with a deposition of Geise, see Docket No. 97, but apparently his deposition was taken on February 11, 2020. See Transcript of February 24, 2020 Hearing, Docket No. 118 at 24:20–22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-00835 JVS (DFMx)                    Date   March 27, 2020

Title   Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

The matter was reset for hearing on February 24, 2020 and subsequently taken under submission.

The Court construes the claim terms identified herein.

# I. BACKGROUND

The patents raised by one or both parties as including disputed claim terms in this case are:

- U.S. Patent No. 7,043,979 ("the '979 Patent");
- U.S. Patent No. 7,140,366 ("the '366 Patent");
- U.S. Patent No. 7,493,902 ("the '902 Patent");
- U.S. Patent No. 7,559,324 ("the '324 Patent");
- U.S. Patent No. 7,958,891 ("the '891 Patent");
- U.S. Patent No. 8,267,092 ("the '092 Patent")[1];
- U.S. Patent No. 10,159,814 ("the '814 Patent");
- U.S. Patent No. 10,252,017 ("the '017 Patent");
- U.S. Patent No. 10,286,174 ("the '174 Patent"); and
- U.S. Patent No. 10,350,376 ("the '376 Patent").

---

[1] In the parties' Joint Claim Construction and Prehearing Statement, FPH states, "[t]he '092 Patent is no longer asserted in this litigation, and thus none of its terms should be construed." Docket No. 71 at 1. Flexicare states that based on the Court's ruling on Flexicare's Rule 11 motion (Docket No. 55, issued September 30, 2019), the terms "nasal cannula assembly" and "gases flow manifold" should be construed as they appear in the '092 Patent "notwithstanding Plaintiff's decision to drop the '092 patent from this case on November 12, 2019." Docket No. 71 at 1. Flexicare also observes that the same claim terms also appear in the '902 and '376 Patents, which are in the same patent family as the '092 Patent and share substantially the same specification. Whether the determinations reached for the constructions of terms in the '902 and '376 Patents should also apply to terms in the '092 Patent will not be decided at this time. The Court will solely refer to the '902 and '376 Patents for the remainder of this Order. The parties do not appear to dispute that the other nine patents listed here are asserted in this case and include claim terms that are disputed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-00835 JVS (DFMx)                     Date   March 27, 2020

Title   Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

*See* Docket No. 44 (Second Amended Complaint). Disputed claim terms appear in each of the asserted patents. Docket No. 71 (Joint Claim Construction and Prehearing Statement).

The parties group the asserted patents into three general categories, which are introduced further herein.

A.     **"Breathing Circuit" Patents ('366, '814, and '174 Patents) and "Breathing Circuit + Heater" Patents ('324, '891, and '017 Patents)**

The '366, '814, and '174 Patents are members of the same patent family. Each one is a continuation of the same earlier patent application such that they share a common specification. The parties colloquially refer to these patents as either members of the "Breathing Circuit" patent group, or as the "Breathable Tube" patents. The '366 Patent is titled "Expiratory Limb for a Breathing Circuit" and issued November 28, 2006. The '814 and '174 Patents are both titled "Components for Breathing Circuits." The '814 Patent issued December 25, 2018 and the '174 Patent issued May 14, 2019.

The '324, '891, and '017 Patents are members of a second patent family. The '324 and '891 Patents are continuations of the same earlier patent application and share a common specification, while the '017 Patent is a continuation-in-part with an overlapping specification. The parties colloquially refer to these patents as either members of the "Breathing Circuit" patent group, or the "Breathable Tube + Heater" patents. The '324 Patent is titled "Conduit with Heated Wick" and issued July 14, 2009. The '891 Patent is titled "Method of Conveying Breathing Gases to or from a Patient" and issued June 14, 2011. The '017 Patent is titled "Conduit with Heating Element" and issued April 9, 2019.

Claim 1 of the '366 Patent states:

1.     A limb for a breathing circuit comprising:
       an inlet,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-00835 JVS (DFMx)                     Date  March 27, 2020

Title  Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

an outlet, and
an enclosing wall defining a substantially singular exhalation flow
        passage between said inlet and said outlet, at least a region of
        said enclosing wall being of a material that allows the passage
        of water vapour without allowing the passage of liquid water or
        respiratory gases
a water vapour flow path from said exhalation flow passage to
        ambient air through said material, and
wherein said limb is an expiratory limb of the breathing circuit.

'366 Patent, Claim 1.

Claim 1 of the '814 Patent states:

1.      A flexible breathing tube forming an expiratory limb for a breathing
circuit comprising:
        an inlet configured to connect to, and receive a flow of expiratory
                gases from, a patient interface component,
        an outlet configured to connect to, and deliver the flow of expiratory
                gases to, other equipment, and
        an enclosing wall forming a flexible singular expiratory flow conduit
                defining a flow passage between the inlet and the outlet and
                bounding the flow passage and ambient air,
                wherein one or more regions of the enclosing wall comprise a
                        material that allows passage of water vapor without
                        allowing passage of liquid water, thereby forming a water
                        vapor flow path from the flow passage to the ambient air
                        through the material,
                wherein the one or more regions are distributed over a length of
                        the enclosing wall, such that the flexible breathing tube is
                        configured to allow diffusion of water vapor along the
                        flexible singular expiratory flow conduit and dry the flow
                        of expiratory gases between the inlet and the outlet

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |

| | |
|---|---|
| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |

> wherein the water vapor flow path flows from the
> passage directly to the ambient air through the material.

'814 Patent, Claim 1. Claim 20 of the '814 Patent is another independent claim of the
'814 Patent for "[c]omponents for a dual limb breathing circuit."

Claim 1 of the '174 Patent states:

1.    An elongate flexible expiratory breathing conduit comprising:
      an inlet connector configured to connect to and receive a flow of
            expiratory gases from a patient interface component;
      an outlet connector configured to connect to and deliver the flow of
            expiratory gases to other equipment, and
      a single flexible corrugated tube connecting the inlet connector to the
            outlet connector, the tube formed of a breathable hydrophilic
            thermoplastic material that allows passage of water vapor from
            the flow of expiratory gases directly to ambient without
            allowing passage of liquid water, the single flexible corrugated
            tube comprising a diameter sufficient to allow an entirety of the
            flow of expiratory gases from the patient to pass through the
            tube.

Claims 13 and 24 of the '174 Patent are other independent claims of the '174 Patent to
an "elongate flexible expiratory breathing conduit" and "dual limb breathing system,"
respectively.

Claim 1 of the '324 Patent states:

1.    A flexible conduit for a breathing circuit comprising:
      an inlet,
      an outlet,
      an enclosing outer wall defining a flexible gases passageway between
            said inlet and said outlet such that respiratory gases flow
            through said inlet into said flexible gases passageway and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

> through said outlet, at least a region of said enclosing outer wall
> being of a material that allows the passage of water vapour
> without allowing the passage of liquid water or respiratory
> gases through said enclosing outer wall, said at least a region
> and said outlet are separate from each other, and
> a heater wire associated with said passageway, wherein
> said flexible conduit is of a type suitable for conveying respiratory
> gases to or from a patient.

'324 Patent, Claim 1. Claim 2 of the '324 Patent is a dependent claim that states:

> 2.      A flexible conduit as claimed in claim 1, wherein said conduit is an
> expiratory limb and said heater wire is located in an expiratory flow path of
> said expiratory limb.

*Id.* at Claim 2.

Claim 1 of the '891 Patent states:

> 1.      A method of conveying humid breathing gases from a patient
> comprising:
>> providing a flexible breathing tube having a first end and a second
>> end, wherein said tube is connected to a patient interface at said
>> first end, said tube comprising:
>> an enclosing outer wall defining a flexible gases passageway between
>> said first end and said second end, and
>> at least a region of said enclosing outer wall being of a material that
>> allows the transmission of water vapour without allowing the
>> transmission of liquid water or respiratory gases through said
>> enclosing outer wall, and wherein said at least a region and said
>> second end are separate from each other;
>> conveying said breathing gases from said patient through said tube;
>> heating said gases in said tube;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

transmitting at least some water vapour from said humid breathing
gases through the enclosing outer wall of said tube.

'891 Patent, Claim 1.

Claim 1 of the '017 Patent states:

1.      A single expiratory tube forming an expiratory limb for a breathing
circuit, the single expiratory tube comprising:
    at a first end of the single expiratory tube, a patient-end connector,
        configured to connect to a Y connector and receive a flow of
        respiratory gases expired by a patient from the Y connector, the
        flow of gases expired by the patient defining an expiratory
        gases flow;
    at a second end of the single expiratory tube, a ventilator-end
        connector, configured to connect to a breathing conduit
        connection port, and configured to deliver the expiratory gases
        flow to a ventilator;
    an enclosing outer wall forming a singular flexible gases conduit
        defining a flow passageway between the patient-end connector
        and the ventilator-end connector, such that, when in use, the
        expiratory gases flow passes through the patient-end connector,
        into the singular flexible gases conduit, and through the
        ventilator-end connector; and
    an elongate heater wire within the singular flexible gases conduit,
    wherein the enclosing outer wall comprises a semipermeable material
        that allows passage of water vapor through the enclosing outer
        wall directly from the flow passageway to ambient without
        allowing passage of liquid water through the enclosing outer
        wall and wherein the semipermeable material runs a length of
        the enclosing outer wall between the patient-end connector and
        the ventilator-end connector.

'017 Patent, Claim 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-00835 JVS (DFMx)              Date     March 27, 2020

Title        Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

**B.     "Nasal Cannula" Patents ('902 and '376 Patents)**

The '376 Patent is a continuation of the '902 Patent, and the two share a common specification. The parties colloquially refer to them as the "Nasal Cannula" patents. Both are titled "Breathing Assistance Apparatus." The '902 Patent issued February 24, 2009 and the '376 Patent issued July 16, 2019.

Claim 1 of the '902 Patent states:

1.     A nasal cannula assembly adapted to deliver gases to a patient, said cannula assembly comprising:
      a face mount part, including at least one nasal prong capable of being fitted into at least one of said patient's nares,
      a removable gases flow manifold part in use connected to and in fluid communication with said face mount part, said manifold part having a single horizontal side gases entry, said manifold part adapted for fluid communication with a gases transportation pathway in use,
      said gases flow manifold part capable of being connected to said face mount part in two configurations, a first configuration where said gases transportation pathway will extend to the left of said nasal cannula assembly when said gases flow manifold part is connected to said face mount part and a second configuration where said gases transportation pathway extends to the right of said nasal cannula assembly when said gases flow manifold part is connected to said face mount part,
      said gases flow manifold part terminating at an open recess,
      said face mounted part including a complementary recess,
      in use said open recess in said gases flow manifold part aligned with said complementary recess in said face mount part thereby providing gases flow to said at least one nasal prong and said at least one of said patient's nares.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

'902 Patent, Claim 1. Claim 10 of the '902 Patent is another independent claim of the '902 Patent to "[a] breathing assistance apparatus." <u>See also</u> Certificate of Correction, July 28, 2009 (correcting a word in Claim 10 of the '902 Patent).

Claim 1 of the '376 Patent states:

1.      A single side entry nasal cannula assembly adapted to deliver gases to a patient's nares, the cannula assembly comprising:
a face mount part, including a tubular body having a lumen opening providing access to a lumen, the face mount part having a first end and a second end, the opening being positioned between the first end and the second end of the face mount part, the face mount part further including at least one prong capable of being fitted into at least one of the patient's nares,
a single gases supply tube connected to the lumen opening of the face mount part, the single gases supply tube extending toward only one of the first end and the second end of the face mount part, and no other gases supply tube extending from the other of the first end and the second end of the face mount part,
the face mount part configured to rest across the top lip of the patient,
a first lateral extension and a second lateral extension, each of the first and second lateral extensions extending laterally outward from the face mount part,
a first support assembly coupled to the first lateral extension and the second lateral extension, the first support assembly configured to engage a head of the patient and to at least partially support the face mount part, and
a second support assembly connected to the gases supply tube and configured to support at least a portion of a weight of the gases supply tube, the second support assembly separate and independent from the first support assembly.

'376 Patent, Claim 1. Claim 13 of the '376 Patent is another independent claim of the '376 Patent to a "single side entry nasal cannula assembly."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-00835 JVS (DFMx)                    Date   March 27, 2020

Title   Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

### C.   "Condensation Deflector" / "Heater Wire" Patent ('979 Patent)

The '979 Patent is titled "Respiratory Humidification System" and issued May 16, 2006. The parties refer to it, for instance, as the "Condensation Deflector and Heater Wire" Patent.

Claim 1 of the '979 Patent states:

1.     A breathing circuit apparatus for housing for a sensor, for example a sensor for providing an output signal indicative of at least one parameter of a flow of gases through said apparatus, comprising:
>    a housing,
>    an internal cavity within said housing,
>    a first aperture in said housing in fluid communication with said
>        internal cavity, in use accepting said flow of gases, then
>        flowing into said internal cavity,
>    a second aperture in said housing in fluid communication with said
>        internal cavity, in use said flow of gases flowing from said
>        internal cavity through said second aperture and said second
>        aperture being at least partially higher than said first aperture,
>    a sensor mounting disposed within said housing between said first
>        aperture and said second aperture, adapted such that in use a
>        sensor located in said sensor mounting being at least partially
>        within the path of said flow of gases, and
>    at least one condensation deflector within said internal cavity adjacent
>        to said sensor mounting, said at least one condensation
>        deflector adapted to in use direct any condensation that forms
>        within said internal cavity at least partially away from a sensor
>        which is located in said sensor mounting.

'979 Patent, Claim 1. Claim 21 of the '979 Patent is a dependent claim that states:

21.     A breathing circuit apparatus as claimed in claim 1 wherein said second aperture is designed to connect to a conduit to convey said flow of

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

gases to a patient, said conduit preferably including a heating means to reduce condensation within said conduit.

*Id.* at Claim 21.

## II. LEGAL STANDARD

Claim construction is "exclusively within the province of the court." Markman v. W. Instruments, Inc., 517 U.S. 370, 372 (1996). Such construction "must begin and remain centered on" the claim language itself. Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). But extrinsic evidence may also be consulted "if needed to assist in determining the meaning or scope of technical terms in the claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances general purpose dictionaries may be helpful." Id. at 1314 (internal citation omitted). In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. Then "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Id. (internal quotation marks omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

history, and extrinsic evidence concerning relevant scientific principles, the meaning of
technical terms, and the state of the art." Id. (internal quotation marks omitted).

But it is improper to read limitations from the specification into the claim.
Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("[I]f we once
begin to include elements not mentioned in the claim, in order to limit such claim . . . we
should never know where to stop.") (quoting Phillips, 415 F.3d at 1312). A court does
"not import limitations into claims from examples or embodiments appearing only in a
patent's written description, even when a specification describes very specific
embodiments of the invention or even describes only a single embodiment, unless the
specification makes clear that 'the patentee . . . intends for the claims and the
embodiments in the specification to be strictly coextensive.'" JVW Enters., Inc. v.
Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) (internal citations
omitted) (emphasis added).

## III. ANALYSIS

1.    **"breathable hydrophilic thermoplastic material" ('174 Patent, Claims
      1, 13, 24)**

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| "a hydrophilic thermoplastic material that allows water vapor from inside the expiratory tube to exit to the outer ambient environment without allowing liquid water from inside the expiratory tube to exit to the outer ambient environment" | "a hydrophilic thermoplastic material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases" | "a hydrophilic thermoplastic material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases" |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |

The parties dispute the meaning of the word "breathable" in the claim phrase "breathable hydrophilic thermoplastic material." In particular, the parties' primary dispute is whether a "breathable" material means a material that does not allow liquid water to pass through it, or a material that does not allow liquid water or respiratory gases to pass through it.

The Breathing Circuit patents include a specific lexicographic definition for the term "breathable." They state, "[h]ereinafter, throughout the description, a material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases is described as a 'breathable' material." '174 Patent at 2:56–60. FPH has not adequately explained why this statement in each of the Breathing Circuit patents should not apply to the meaning of the term "breathable" or is otherwise not definitional.

FPH notes that the relevant claims of the '174 Patent do not on their face include the requirement that the claimed "breathable hydrophilic thermoplastic material" prevent the passage of respiratory gases. See FPH Resp. Br. at 2. FPH dismisses the definition of "breathable" in the patent specification as "one statement in the specification," and argues that it is not applicable here because it simply relates to a breathable material and not the claimed breathable hydrophilic thermoplastic material. At the hearing, FPH argued that like the claim language, the specification sometimes describes "breathable regions" with reference to respiratory gases, but other times with reference only to water vapor permeability. See, e.g. '174 Patent at Abstract, 10:38–44, 11:1–4. Having considered FPH's arguments, the Court finds that they do not provide a sufficient basis to support ignoring the clear lexicographic definition of "breathable" in the context of this larger claim term.

Flexicare challenges portions of FPH's proposed construction for other reasons, including the fact that FPH's construction would potentially exclude coaxial embodiments by requiring water vapor to exit to the "ambient environment." The Court agrees with Flexicare that it is not necessary to incorporate this limitation into a proposed construction for this term. As FPH itself acknowledges, these concepts are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-00835 JVS (DFMx)                    Date     March 27, 2020

Title        Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

already claimed or narrowed through other aspects of the claim language itself, making the issue largely moot as far as the asserted claims of the '174 Patent are concerned.

The Court notes that although it agrees with Flexicare regarding the construction of this claim term, that does not mean that it agrees with Flexicare's interpretation of the phrase "without allowing the passage of liquid water or respiratory gases" itself. The parties' dispute regarding the meaning of that phrase will be discussed in the next section.

The term "breathable hydrophilic thermoplastic material" is construed as "a hydrophilic thermoplastic material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases."

2.     "without allowing . . . liquid water or respiratory gases" Terms

•     "without allowing the passage of liquid water or respiratory gases" ('366 Patent, Claim 1; '324 Patent, Claim 1)

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning; no construction necessary.<br><br>Alternatively, if a construction is required: "without allowing liquid water or respiratory gases from inside the expiratory tube to exit to the outer ambient environment" | "preventing the passage of any measurable amount of liquid water or respiratory gases" | "without allowing more than the de minimis passage of liquid water or respiratory gases" |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

- **"without allowing the transmission of liquid water or respiratory gases" ('891 Patent, Claim 1)**

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning; no construction necessary.<br><br>Alternatively, if a construction is required: "without allowing liquid water or respiratory gases from inside the expiratory tube to transmit to the outer ambient environment" | "preventing the transmission of any measurable amount of liquid water or respiratory gases" | "without allowing more than the de minimis transmission of liquid water or respiratory gases" |

Although the parties only identified three claims as including the disputed claim terms "without allowing the [passage]/[transmission] of liquid water or respiratory gases," similar claim terms, some referring only to not allowing passage of liquid water, appear in all of the Breathing Circuit patents. Claim 1 of the '366 Patent is a typical example of how this phrase and similar phrases are used in context:

1.     A limb for a breathing circuit comprising:
an inlet,
an outlet, and
an enclosing wall defining a substantially singular exhalation flow
        passage between said inlet and said outlet, at least a region of
        said enclosing wall being of a material that allows the passage
        of water vapour <u>without allowing the passage of liquid water or
        respiratory gases</u>
a water vapour flow path from said exhalation flow passage to
        ambient air through said material, and
wherein said limb is an expiratory limb of the breathing circuit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

'366 Patent, Claim 1 (emphasis added). In other words, the "without allowing . . ." phrases are used to describe some of the properties of claimed materials, which the claims otherwise specify as, for instance, "allow[ing] the passage of water vapour."

In essence, the parties dispute whether the phrase "without allowing the [passage]/[transmission] of liquid water or respiratory gases" should be interpreted to permit some de minimis passage/transmission of liquid water or respiratory gases through the material claimed, or as permitting passage/transmission of absolutely no measurable quantity of liquid water or respiratory gases.

The Breathing Circuit patents describe just two categories of materials as "breathable," i.e. as "a material that allows the passage of water vapour without allowing the passage of liquid water or respiratory gases." See, e.g. '366 Patent at 2:11–15; see also supra. Specifically, the Breathing Circuit patents discuss materials with the trade names NAFION (id. at 3:1–8) and SYMPATEX (id. at 3:11–16). With its responsive claim construction brief, FPH submitted the declaration of Geoffrey M. Geise, who provides opinions regarding the properties of these types of materials. See Declaration of Geoffrey M. Geise in support of FPH's Reply Claim Construction Brief ("Geise Decl."), Docket No. 80. Geise stated that NAFION and SYMPATEX both permit the passage of some measurable, but de minimis, amount of respiratory gases based on their material properties. See Geise Decl. ¶¶ 29–30 (identifying scientific articles regarding NAFION's permeability and comparing the 1.3 to 3.5 "barrer" permeability measurement for carbon dioxide in NAFION to its 160,000 barrer permeability for water vapor), id. at ¶¶ 37–38 (identifying scientific articles regarding the permeability of a polymer similar to Sympatex and comparing 36 to 130 barrer permeability for carbon dioxide compared to 21,000 to 59,000 barrer permeability for water vapor in that polymer). Geise explains that in view of the specification's disclosure of these sample materials, "a person of ordinary skill in the art would have understood that a de minimis amount of gas could permeate through such breathable materials, without rendering that material unsuitable for use in the breathing circuit context if the volume of gases is low enough." Id. ¶ 39.

In response to Geise's Declaration, Abraham's Supplemental Declaration challenges the applicability of the scientific articles supporting Geise's opinions. In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

particular, Abraham observes that Geise's cited articles for NAFION involved, among other things, testing conditions with high pressures, time delays before measurement, and/or stationary conditions where gases are not moving through, for example, a tube. See Abraham Supp. Decl. ¶¶ 30–34, 66–82. Abraham challenges Geise's opinions regarding the polymer similar to Sympatex on the basis that it is not Sympatex itself. See, e.g. id. ¶ 80. Abraham also refers to general statements in marketing materials for NAFION and Sympatex as supporting his conclusion that, in the context of breathing tubes like those disclosed in the relevant asserted patents, there would be no measurable amount of permeability to respiratory gases. Id. ¶¶ 19–21, 41–51.

Geise provides a detailed and thorough technical response in his supplemental declaration. Geise strongly emphasizes his opinion that a person of skill in the art would rely on his cited scientific articles, even though they provide different testing conditions. See, e.g. Geise Supp. Decl. ¶ 37. He states,

> a person of ordinary skill in the art can reference those testing studies and the reported permeability properties and use mathematical models to calculate the expected permutation rate in their specific application. Such normalized permeability test studies are helpful so that testing does not need to be performed at every pressure or for every application.

Id. (emphasis added). He states that he has routinely "sought and used material properties, measured in the context of different applications and/or at different experimental conditions, to inform my understanding of how those materials would function in the different applications of interest to my studies." Id. ¶ 39. He urges that "permeability is a material property of NAFION and was observed." Id. ¶ 41. He challenges Abraham's reliance on generalized statements in marketing materials as not providing specific testing data, and as using words or phrases that do not preclude a determination that a material is permeable to certain gases. Id. ¶¶ 11–33; see, e.g. id. ¶ 31–33.

Critically, as both experts acknowledge, the claims are to apparatuses and methods relating to breathing tubes and regions in those tubes that, for instance, "allow[ ] the transmission of water vapour without allowing the transmission of liquid water or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |

| | |
|---|---|
| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |

respiratory gases through said enclosing outer wall." '891 Patent, Claim 1. The claims, including this limitation and similar ones, do not include requirements regarding the material properties (including permeability) of the regions per se, but instead are firmly rooted in the context of the surrounding claim limitations. The relevant question is whether, in the context of the claimed breathing tube or associated method, someone would see a measurable amount of transmission of respiratory gases through the relevant material while it is in use. In other words, the claim limitations relate to whether there would be a measurable permeation rate, not simply whether a particular material has some amount of permeability as a material property. Although Geise states that his scientific articles are relevant in that they would permit a POSITA to calculate an expected permeation rate in their specific application (Geise Supp. Decl. ¶ 37), Geise does not attempt to perform such a calculation here. Based on a review of the expert's declarations, it is unclear whether, given the small amount of permeability measured in Geise's cited scientific articles in the extreme conditions they studied, a mathematical model would indeed reveal a measurable amount of gas transmission through NAFION or Sympatex in the context of the claimed inventions.

At the supplemental hearing, FPH expressed concern that a construction referring to no measurable amount of gas transmission could exclude the disclosed embodiments. FPH suggested that Flexicare might attempt to craft some test with the benefit of present-day measurement equipment and use that text to show that some small but measurable amount of gas molecules could pass through a material otherwise equivalent to the categories of materials disclosed in the '366 Patent. FPH argued, further to that point, that the Court's tentative construction of "without allowing the [passage]/[transmission] of any measurable amount of liquid water or respiratory gases" was not sufficiently tethered to the context of breathing tube conditions, even though the Court elsewhere emphasized the importance of considering those conditions in its supplemental tentative claim construction ruling. FPH also urged the Court to consider a reference to "Broka" that was cited for the first time in Geise's supplemental declaration. *See* Docket No. 93-3 ("Oxygen and hydrogen permeation properties and water uptake of Nafion® 117 membrane and recast film for PEM fuel cell," K. Broka et al, Journal of Applied Electrochemistry 27 (1997)). In Broka, the total pressure on both sides of a Nafion membrane was the same, but oxygen permeation was still observed. FPH also argued that words like "inhibit," "prevent," and "prohibit" are not "absolute words."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-00835 JVS (DFMx)                    Date     March 27, 2020

Title        Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

Flexicare responded by noting differences between the circumstances present in Broka compared to a breathing tube, including by arguing that the Broka study involved a stationary test, high pressure, and a measurement taken after 6 hours.[2] See 2/24/2020 Tr., Docket No. 118 at 23:8–9 ("six hours is far longer than the resident time of CO2 in the breathing tube."). Flexicare also for the first time at the hearing submitted additional pages of Perma Pure product brochures for Nafion dryers.[3] *See* Docket No. 114 (materials lodged after February 24, 2020 hearing). Under the heading "Dryer Selectivity," the brochure states in part, "Nafion is not only highly resistant to chemical attack, it also exhibits highly selective absorption. Most substances are retained quantitatively inside the tubing." Docket No. 114-2 at ECF5. The brochure then includes the following table:

---

[2] In rebuttal argument at the hearing, FPH disputed that Broka involved a stationary test. FPH argued that Broka involved oxygen flowing through the test apparatus. See also Geise Supp. Decl. ¶ 57.

[3] The Court has concerns with Flexicare's recent habit of submitting relevant evidence to the Court either the day before a hearing or at a hearing itself. See also, e.g. Docket No. 86 (declaration submitted by Flexicare at 9:12pm the night before January 13, 2020 hearing). Both parties are expected to disclose relevant evidence relating to a dispute as soon as possible, and certainly in advance of a hearing on such a dispute. See 2/24/2020 Tr., Docket No. 118 at 24:20–22 (document submitted by Flexicare to Court for first time at February 24, 2020 hearing had been produced to Flexicare over ten days earlier). Relatedly, the Court is considering requiring the service and filing of any hearing demonstratives at least seven days in advance of a motion hearing, in order to avoid additional unnecessary surprise and ambush in the oral arguments presented by the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

| TOTALLY RETAINED | |
|---|---|
| **Atmospheric Gases** | **Hydrocarbons** |
| $N_2$ $O_2$ $H_2$ Ar He | All simple hydrocarbons |
| **Oxides** | **Toxic Gases** |
| CO $CO_2$ $SO_2$ $SO_3$ $NO_X$ | HCN $COCl_2$ NOCl |
| **Halogens** | **Other Organics** |
| $Cl_2$ $F_2$ HCl HF HBr | Aldehydes, THF |
| Fluorocarbons | Cyanides, Esters |
| **Sulfur** | **Inorganic Acids** |
| $H_2S$ COS Mercaptans | $HNO_3$ $H_2SO_4$ |

| SOME LOSS | |
|---|---|
| **Polar Organics** | **Other** |
| DMSO, Alcohols | $NH_3$ Amines |
| Organic Acids, Ketones | |

**Table 1**
**Nafion Selectivity**

*Id.* Flexicare also appeared to agree with FPH that "you have got to test these products in context, and the context is in the context of breathing tubes." 2/24/2020 Tr., Docket No. 118 at 32:23–25.

FPH argued in rebuttal that little weight should be afforded to Flexicare's proffered product brochure because it did not actually state that testing was performed or that there was zero permeability for certain gases. FPH reiterated concerns that any construction of the term should be "anchored to how these breathing tubes operate." 2/24/2020 Tr., Docket No. 118 at 37:18–19.

FPH also noted in rebuttal that Flexicare did not address during oral argument whether it would seek to employ present-day, molecular-level tests to show that the materials in the accused products had some measurable passage or transmission of respiratory gases. However, in response to questions from the Court, Flexicare did state that it would not object to adding a phrase to the construction that specifically defined the claim term in the context of breathing tubes.

On such a record, the unequivocal language of both the claims and specification must control. There is insufficient basis at this time to find that Flexicare's proposed construction would exclude the preferred embodiments in the patent specification from the scope of this term. Further, Flexicare's cited product brochures provide additional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

evidence, consistent with the remainder of the intrinsic record, that support Flexicare's position.

The Court acknowledges FPH's concerns about Flexicare's possibly attempting to employ a present-day, molecular-level test of a material separated from the context of a breathing tube circuit to show that there can be a measurable transmission of respiratory gases through the material. Claims are meant to be understood from the perspective of a person of skill, in the art, and at the time of the invention, and the Court intends its construction of the claim terms to be understood in that relevant context, even when not explicitly stated. Despite FPH's stated concerns, Flexicare has not yet indeed affirmatively stated that it intends to employ such a test. If Flexicare did seek to do so, it should consider that that the term "measurable," like the rest of the claim terms, must be understood from the perspective of a person of skill at the time of the invention. Further, if a sophisticated testing methodology shows a measurable amount of gas passage/transmission via a particular accused material, it would also be relevant if the same testing showed a measurable amount of gas passage/transmission via Nafion or Sympatex. Again, the Court at this time has not found that, and does not intend for, its construction to exclude these preferred embodiments.

As with the term "breathable hydrophilic thermoplastic material," Flexicare challenges portions of FPH's alternative proposed construction for other reasons, including the fact that FPH's construction is focused on conduits delivering gases away from a patient (instead of leaving it open to covering conduits delivering gases to or from a patient) and would potentially exclude coaxial embodiments by requiring water vapor to exit to the "ambient environment." The Court agrees with Flexicare that it is not necessary to incorporate these limitations into a proposed construction for this term. Again, many of these concepts are already claimed or narrowed through other aspects of the claim language itself.

In its briefing, FPH suggests some difference in the meanings of the terms "passage" and "transmission," such that the "without allowing the [passage]/[transmission] of liquid water or respiratory gases" require different constructions. However, FPH does not articulate what it actually believes to be the distinction between the meaning of these two words.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

The Court construes the terms "without allowing the [passage]/[transmission] of liquid water or respiratory gases" as "without allowing the [passage]/[transmission] of any measurable amount of liquid water or respiratory gases when the claimed breathing tube, conduit, or circuit is in use."

### 3. "semipermeable material" ('017 Patent, Claims 1, 12)

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning; no construction necessary.<br><br>Alternatively, if a construction is required: "partially permeable material" | "a material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases" | "a material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases" |

The critical issue regarding the claim term "semipermeable material" is whether it is used in the '017 Patent specification interchangeably with the term "breathable material," such that the patent's lexicographic definition of "breathable" should be incorporated into the claim construction for "semipermeable material."

The term "semipermeable material" appears in the specification of the '017 Patent just once. The specification states:

An example of application of the conduit with heated wick is shown in FIG. 6. A heater element **110** coated with a hydrophilic layer, <u>runs the length of the **semipermeable conduit 102**</u> and the inspiratory conduit **101**. During operation humidified gases are drawn through inspiratory conduit **101**, then flow through the Y connector **103**, and are then delivered to the patient (not shown). When the patient expires the gases flow through the Y connector

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title     Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

**103**, and then flow through the breathable expiratory conduit **102**. The expiratory gases will be almost saturated with humidity and as the wall of the breathable expiratory conduit **102** will be relatively cool, some portion of the vapour in the gases will condense and therefore water will collect in the conduit and run towards the lowest point **106**. As already mentioned such collection of water is undesirable and therefore the heated wick **100** is provided to revaporise the water that collects. This is particularly important where the breathable material is one, such as SYMPATEX, which transmits water vapour but does not transmit liquid water. While such materials are advantageous for their ability to stop harmful bacteria and viruses this advantage is offset by their inability to transmit liquid water. By re-evaporation of any collected water by the heated wick it can be transmitted through the breathable membrane in its vapour state.

'017 Patent at 5:12–35 (emphasis added). FPH discounts this disclosure by arguing that "[b]oth 'the semipermeable conduit 102' and 'the breathable expiratory conduit 102' are merely examples of the conduit 102 . . . that is mentioned dozens of times in the specification." FPH Resp. Br. at 4. The Court disagrees with FPH's characterization of the intrinsic record. Instead, the word "semipermeable" is used in the specification in a way that shows the applicant understood it as being interchangeable with the term "breathable." Although it appears in the specification only once, its use in the specification in the same paragraph and apparently referencing the same particular conduit 102 embodiment supports finding it coextensive with the phrase "breathable [expiratory] material" in the context of the patent claims.

The term "semipermeable material" is construed as "a material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases."

**4.     "material" ('814 Patent, Claims 1, 20)**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title        Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning; no construction necessary. | "a material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases" | No construction |

The parties dispute whether the word "material" as it appears in Claims 1 and 20 of the '814 Patent, without any associated adjectives like "breathable" or "semipermeable," should still be limited to mean a breathable material, i.e. "a material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases."

Claims 1 and 20 of the '814 Patent already require that the claimed material be, for instance, "a material that allows passage of water vapor without allowing passage of liquid water, thereby forming a water vapor flow path from the flow passage to the ambient air through the material." '814 Patent at Claim 1. The parties' dispute thus relates to whether the claim term should also be limited to preclude the passage of respiratory gases through the material.

Unlike the other "material" terms construed in this Order, Flexicare has not provided a basis to show that importing an additional limitation into the meaning of this claim term based on preferred embodiments disclosed in the patent specification is warranted. The claim itself already sufficiently defines the properties of the claimed "material," and there are no lexicographic definitions for the term "material" itself that support limiting it to be a breathable material. As FPH also notes, Flexicare's cited examples in the specification "undermine Flexicare's proposed construction because they confirm that the specification and claims use the term 'breathable' to describe such materials, but the claims of the '814 Patent recite a 'material' without describing it as 'breathable.'" FPH Resp. Br. at 6.

The Court finds that no construction is necessary for the term "material."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

5.   **"expiratory limb" ('814 Patent, Claims 1, 20; '366 Patent, Claim 1; '017 Patent, Claim 1; '324 Patent, Claim 2)**

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| "tubing portion that connects the patient interface component to another piece of equipment (such as a ventilator) to provide a conduit for directing expired air away from the patient and toward the other piece of equipment" | "a tubing portion that directly or indirectly connects a patient interface component to another piece of equipment and provides a conduit to direct expired air away from the patient and toward another piece of equipment"<br><br>"expiratory limb" in preamble language is not limiting | "tubing portion that connects the patient interface component to another piece of equipment to provide a conduit for directing expired air away from the patient and toward the other piece of equipment"<br><br>"expiratory limb" in the preamble of Claim 1 of the '017 Patent is found limiting and in the preamble of Claim 1 of the '814 Patent is not found limiting. |

The parties originally presented two disputes regarding the meaning of the term "expiratory limb."

However, in its responsive claim construction brief, FPH agrees that an expiratory limb may be directly or indirectly connected to other pieces of equipment. FPH Resp. Br. at 13. FPH instead "objects to Flexicare's attempt to use this language to encompass other types of tubes or components, such as $CO_2$ absorbers, dryers, and gas sampling lines, into the construction of 'expiratory limb.'" Id. On this basis, FPH requests that a construction "make clear that the 'expiratory limb' connects to equipment such as a ventilator." Id. FPH's assertions do not appear to be directly responsive to statements in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)          Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

Flexicare's opening claim construction brief, where Flexicare explains that the
specification discloses "ancillary equipment such as filters, ventilators and the like" as
connected to an expiratory limb. See '814 Patent at 10:40–42. Flexicare argues that if
any additional specificity in a claim construction is needed, these other alternatives
should be included rather than simply a reference to "ventilator," which could confuse a
juror into believing ventilators are the only possible connecting structures. See Flexicare
Op. Br. at 15–16. FPH does not cite a basis for its understanding that Flexicare is
seeking to extend the meaning of the term "expiratory limb" to encompass FPH's other
example components (see also Flexicare Resp. Br. at 12:10–12, 13:28–14:2), and the
Court also tends to agree with Flexicare that FPH's construction would imply an
expiratory limb can be connected only to a ventilator, when FPH has not stated that as its
position or provided evidence to support such a position. On the current record, the
Court will not add FPH's proposed example to a construction of the term. But the Court
also does not see a basis to include the phrase "directly or indirectly" in a construction of
the term itself. Each parties' proposed construction refers to connecting the expiratory
limb "to another piece of equipment." Without identifying what that piece of equipment
must be, stating that the expiratory limb can be directly or indirectly connected to it is
not illuminating.

     The parties' sole remaining substantive dispute for the claim term "expiratory
limb" appears to be whether it is limiting in Claims 1 of the '814 Patent and Claim 1 of
the '017 Patent, where it appears in the claim preamble.

     "[A] preamble is not limiting where a patentee defines a structurally complete
invention in the claim body and uses the preamble only to state a purpose or intended
use for the invention." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801,
808 (Fed. Cir. 2002) (quotations and citations omitted). But "[i]f the claim preamble,
when read in the context of the entire claim, recites limitations of the claim, or, if the
claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the
claim preamble should be construed as if in the balance of the claim." Pitney Bowes,
Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305, 51 USPQ2d 1161, 1165-66 (Fed. Cir.
1999). Although there is no "litmus test [that] defines when a preamble limits claim
scope," the Federal Circuit has stated as one "guidepost" that "dependence on a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

particular disputed preamble phrase for antecedent basis may limit claim scope because
it indicates a reliance on both the preamble and claim body to define the claimed
invention." <u>Catalina Mktg.</u>, 289 F.3d at 808.

As noted, Claim 1 of the '814 Patent recites:

1.    A flexible breathing tube forming an <u>expiratory limb</u> for a breathing
circuit comprising:
 an <u>inlet</u> configured to connect to, and receive a flow of expiratory
  gases from, a patient interface component,
 an <u>outlet</u> configured to connect to, and deliver the flow of expiratory
  gases to, other equipment, and
 <u>an enclosing wall forming a flexible singular expiratory flow conduit</u>
  <u>defining a flow passage between the inlet and the outlet</u> and
  bounding the flow passage and ambient air,
  wherein one or more regions of the enclosing wall comprise a
   material that allows passage of water vapor without
   allowing passage of liquid water, thereby forming a water
   vapor flow path from the flow passage to the ambient air
   through the material,
  wherein the one or more regions are distributed over a length of
   the enclosing wall, such that the flexible breathing tube is
   configured to allow diffusion of water vapor along the
   flexible singular expiratory flow conduit and dry the flow
   of expiratory gases between the inlet and the outlet
   wherein the water vapor flow path flows from the
   passage directly to the ambient air through the material.

'814 Patent at Claim 1 (emphasis added). The substantive limitations of Claim 1 of the
'814 Patent describe a structurally complete invention, including by reciting an inlet,
outlet, and wall "forming a flexible singular <u>expiratory flow</u> conduit," with specific
descriptions of the limitations surrounding that conduit, including the material forming it
and the direction of expiratory gas flow (from the "patient interface component" and
towards "other equipment"). FPH's argument that the language in the preamble "forms

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-00835 JVS (DFMx)                    Date     March 27, 2020

Title        Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

the structure for the claimed invention" is not persuasive when looking at the plain claim limitations themselves. See FPH Resp. Br. at 12.

Claim 1 of the '017 Patent, meanwhile, states inter alia,

1.    A single expiratory tube forming an expiratory limb for a breathing circuit, the single expiratory tube comprising:

    at a first end of the single expiratory tube, a patient-end connector, configured to connect to a Y connector and receive a flow of respiratory gases expired by a patient from the Y connector, the flow of gases expired by the patient defining an expiratory gases flow;

    at a second end of the single expiratory tube, a ventilator-end connector, configured to connect to a breathing conduit connection port, and configured to deliver the expiratory gases flow to a ventilator;

    an enclosing outer wall forming a singular flexible gases conduit defining a flow passageway between the patient-end connector and the ventilator-end connector, such that, when in use, the expiratory gases flow passes through the patient-end connector, into the singular flexible gases conduit, and through the ventilator-end connector[.]

'017 Patent, Claim 1. This claim is similar to Claim 1 of the '814 Patent in that the claim limitations themselves recite the equivalent of an inlet, an outlet, and an outer wall "forming a singular flexible gases conduit," as well as the material properties (not shown in the above excerpt of the claim) of the conduit and the direction of gas flow. However, Claim 1 of the '017 Patent also refers to "the single expiratory tube" in the body of the claim, which takes antecedent basis from the preamble's recitation of "[a] single expiratory tube forming an expiratory limb for a breathing circuit."  In this case, the claim language itself thus "indicates a reliance on both the preamble and claim body to define the claimed invention." Catalina Mktg., 289 F.3d at 808. Moreover, as FPH observes, Claims 2 and 5 of the '017 Patent specifically refer to "the expiratory limb," relying on its appearance in the preamble of Claim 1 for antecedent basis. See, e.g., '017

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |

Patent, Claim 5 ("The expiratory tube of claim 1, wherein the expiratory limb includes no drainage ports for draining liquid.").

FPH argues that the prosecution history supports the conclusion that the preamble is limiting in these claims. FPH Op. Br. at 7–8. The Court has reviewed the cited portions of the prosecution history for the application leading to the '814 Patent. Docket No. 74-16 at FPHFLX0001760–61. In an Office Action Response, the patent applicant quoted the proposed language for proposed Claim 1 of the '814 Patent, including by bolding portions of the preamble and the terms "inlet," "outlet," and "enclosing wall defining a flexible singular expiratory flow conduit" in the body of the claim. The applicant stated that neither prior art reference that had been cited by the examiner "describe[s] an expiratory limb or flexible breathing tube with the vapor permeable characteristics recited in Claim 1." The applicant observed that the prior art references' disclosure of a dryer is not an "expiratory limb or conduit." Id. at FPHFLX0001761 ("The dryer of Wikefeldt is not an expiratory limb or conduit."). The applicant proceeded to use the terms "expiratory limb," "expiratory conduit," and "expiratory tube" seemingly interchangeably. See, e.g. Id. at FPHFLX0001762–63 ("Nowhere does Wikefeldt teach a flexible expiratory tube . . . . Rather, . . . the length of vaper permeable tubing 140 is quite short [in Wikefeldt] compared to the illustrated expiratory limb 24 . . . . Kertzman does not cure the deficiencies of Wikefeldt . . . . The small diameter sampling tube of Kertzman could not be used as an expiratory conduit.").

The prosecution history does not support the conclusion that the preamble is limiting inasmuch as it suggests that the term "singular expiratory flow conduit" in the body of Claim 1 of the '814 Patent has a coextensive meaning with the term "expiratory limb." However, the parties have not sought construction of the term "singular expiratory flow conduit" at this time. The Court does not believe the prosecution history serves as a basis to find the preamble of Claim 1 of the '814 Patent is limiting, given the complete structure provided by the limitations in the body of the claim itself and its understanding of the statements in the prosecution history.

At the hearing, FPH again argued that the patent applicant's statements during prosecution history show that the patent applicant distinguished the prior art on the basis of the preamble term "expiratory limb." See Docket No. 74-16 at FPHFLX0001760

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-00835 JVS (DFMx)                     Date   March 27, 2020

Title   Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

("neither Wikefeldt nor Kertzman describe an expiratory limb or flexible breathing tube with the vapor permeable characteristics recited in Claim."); FPHFLX0001761 ("The dryer of Wikefeldt is not an expiratory limb or conduit, does not connect to a patient interface component, and does not provide a vapor flow path from the passage through the vapor material of the wall to ambient air."); FPHFLX0001762 ("The teachings of Wikefeldt fail to teach or enable a person of skill in the art to make an entire expiratory tube or limb out of vapor permeable material with sufficient structural integrity and flexibility and sufficient . . . vapor permeability to adequately dry expiratory gases."); FPHFLX0001763 ("The Office Action also fails to suggest any motivation for replacing the dryer or expiration limb of Wikefeldt with a vapor permeable expiratory limb connected to a patient interface component based on the disclosure of the gas sampling line of Kertzman."). Particularly without information regarding the parties' positions as to the meaning of the term "singular expiratory flow conduit," and for the same reasons already stated as to these portions of the prosecution history, FPH's argument that the term "expiratory limb" as it appears in the preamble of Claim 1 of the '814 Patent is rejected.

The term "expiratory limb" is construed as "tubing portion that connects the patient interface component to another piece of equipment to provide a conduit for directing expired air away from the patient and toward the other piece of equipment." Its use in the preamble of Claim 1 of the '017 Patent is found limiting and its use in the preamble of Claim 1 of the '814 Patent is not found limiting.

**6.    "nasal cannula assembly" ('902 Patent, Claims 1, 10; '376 Patent, Claims 1, 13)**

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning; no construction necessary. | "a nasal cannula for providing gases to a patient having at least a face mount part and a gases flow manifold part [(as further construed by the Court in | "a nasal cannula for providing gases to a patient having at least a face mount part and a gases flow manifold part, where the assembly can include |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

| | the context of the '902 Patent)], the assembly being without two gas entries or a plug to seal an unused gas entry as described in the prior art" | one or more gas entry configurations for a gases supply tube or gases transportation pathway, but only one gas entry may be operable at any time" |
|---|---|---|

The parties have two disputes regarding the term "nasal cannula assembly." First, they dispute whether the term requires an assembly of components that always includes a "gases flow manifold part." Second, they dispute whether the meaning of the term was limited during patent prosecution such that it should not cover "two gas entries or a plug to seal an unused gas entry as described in the prior art."

Regarding the parties' first dispute, the claims of the '902 Patent explicitly require that the nasal cannula assembly include a gases flow manifold part. For instance, Claim 1 of the '902 Patent states, inter alia,

> 1.    A nasal cannula assembly adapted to deliver gases to a patient, said cannula assembly comprising:
> a face mount part, including at least one nasal prong capable of being fitted into at least one of said patient's nares,
> a removable gases flow manifold part in use connected to and in fluid communication with said face mount part, said manifold part having a single horizontal side gases entry, said manifold part adapted for fluid communication with a gases transportation pathway in use[.]

'902 Patent, Claim 1 (emphasis added). The parties' dispute instead relates to whether the requirement for a gases flow manifold part should be extended to the '376 Patent claims, which do not recite one in the claim limitations themselves.

Claim 1 of the '376 Patent states:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |

| | |
|---|---|
| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |

1.   A single side entry nasal cannula assembly adapted to deliver gases to a patient's nares, the cannula assembly comprising:

   a face mount part, including a tubular body having a lumen opening providing access to a lumen, the face mount part having a first end and a second end, the opening being positioned between the first end and the second end of the face mount part, the face mount part further including at least one prong capable of being fitted into at least one of the patient's nares,

   a single gases supply tube connected to the lumen opening of the face mount part, the single gases supply tube extending toward only one of the first end and the second end of the face mount part, and no other gases supply tube extending from the other of the first end and the second end of the face mount part,

   the face mount part configured to rest across the top lip of the patient,

   a first lateral extension and a second lateral extension, each of the first and second lateral extensions extending laterally outward from the face mount part,

   a first support assembly coupled to the first lateral extension and the second lateral extension, the first support assembly configured to engage a head of the patient and to at least partially support the face mount part, and

   a second support assembly connected to the gases supply tube and configured to support at least a portion of a weight of the gases supply tube, the second support assembly separate and independent from the first support assembly.

'376 Patent, Claim 1.

   FPH did not challenge construction of the term "nasal cannula assembly" on the basis that appears in the preamble of Claim 1. Further, the phrase appears in the body of Claim 13 and in the body of dependent claims that depend from Claim 1, supporting that it can be construed as a claim limitation as to both Claim 1 and Claim 13. See '376 Patent at Claim 8 ("The nasal cannula assembly of claim 1, wherein the second support assembly is configured transfer some of the weight of the gases supply tube pulling on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

the nasal cannula assembly, while helping to prevent the nasal prongs interfering with sensitive lining of the patient's nares."), Claim 13 (referring to shorter phrase "the nasal cannula assembly" in the body of the claim itself at column 13, lines 25–26).

As Flexicare notes, the patent applicant chose to employ the phrase "nasal cannula assembly," as opposed to the previously-known term "nasal cannula" in the claims. In each disclosed embodiment in the specification, as well as each of the asserted claims, there is no dispute that the claimed "nasal cannula assembly" at least includes a "face mount part." Although the parties did not request construction of this functional-sounding term, the Court again observes that the applicant's choice of the phrase "face mount part" is unique from prior art embodiments in the record that again may have simply referred to just a nasal cannula. Given that the term is to a "nasal cannula assembly" that includes a particularized "face mount part," the Court agrees with Flexicare that there must be another component in relation to the face mount part to warrant use of the word "assembly."

The only component disclosed in the specification as satisfying this role is the gases flow manifold part. As Flexicare notes, the specification consistently describes the disclosed, preferred embodiments, which include a gases flow manifold part, as "forms" or "aspects" of the invention. See, e.g., '902 Patent at 3:14–22, 5:63–6:2, 7:7–13, 8:11–13, 8:36–38; see also id. at Figs. 2, 3, 8, 9. These disclosed embodiments show exemplary unique structural configurations for the "nasal cannula assembly" as well as its component "face mount part" and "gases flow manifold part."

At the hearing, FPH argued that the claims already require other components besides the "face mount part" to form the "nasal cannula assembly." For instance, in Claim 13, the nasal cannula assembly also additionally comprises a single gases supply tube, head gear, and a flexible tether. FPH argued that the patent applicant knew when to independently claim a gases flow manifold part, and indeed did so. On these bases, FPH argued that the common word "assembly" should not be construed to require a "gases flow manifold part" under these circumstances.

FPH also cited the prosecution history. FPH argued that during prosecution the proposed claim that eventually issued as Claim 1 of the '376 Patent was rejected over a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-00835 JVS (DFMx)                    Date   March 27, 2020

Title   Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

reference to "Smith." FPH argued that Smith does not disclose a gases flow manifold part, showing that the Examiner did not understand the claims of the '376 Patent to require a gases flow manifold part.

Flexicare responded that the claim language itself, by its other requirements, inherently requires a gases manifold part. Flexicare observed, for instance, that the claims require a single side entry into the nasal cannula assembly, in combination with an opening in the face mount part between the first and second end. Flexicare argued that this configuration requires something to connect the gases supply tube into the center of the face mount part. Flexicare also argued that the Examiner's interpretation of the claims during prosecution history should not serve as a basis to construe the term more broadly. Flexicare further noted that the proposed claim was amended after further rejections to incorporate the configuration that Flexicare urges "make it absolutely necessary to have that component that goes from the side entry gases supply tube into the center of the face mount part." 1/13/2020 Tr. at 31:12–15.

The Court has reviewed the arguments presented by the parties. Ultimately, it maintains that the particular nomenclature employed by the Nasal Cannula patents in both their claims and specification support finding the term "nasal cannula assembly" requires a gases flow manifold part. The claims do not use the word "assembly" alone, but use it in the phrase "nasal cannula assembly." The specification, in turn, consistently discloses embodiments including the combination of a face mount part and gases flow manifold part. This record supports the conclusion that the gases flow manifold part is a critical aspect of the claimed nasal cannula assembly. Although the Court acknowledges FPH's position that, consistent with use of the word "assembly," the claims already require other aspects of the nasal cannula assembly beside the face mount part, the Court finds that more is warranted based on the disclosure in the patent specification. Similarly, although the Court does not reach a determination as to Flexicare's argument that a gases flow manifold part is inherently required by the claimed configuration of the face mount part compared to the gases entry tube, the Court is not persuaded by FPH's arguments regarding the prosecution history and the Examiner's cited prior art with respect to an earlier version of proposed Claim 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

Regarding the parties' second dispute, Flexicare argues that the claims should be limited based on statements made both in the specification of the Nasal Cannula Patents and amendments made during patent prosecution. The parties at least appear to agree that the claims do not cover an assembly with two gas entries being used in operation at the same time. Limitations in the patent claims themselves warrant against this. Instead, the parties focus their dispute on whether the patent specification and prosecution history support omitting from the claims configurations where a plug is used to seal one entry in what would otherwise be a two-entry cannula. Flexicare argues that the patent specifications themselves refer to a prior art patent that involved a nasal cannula where a plug was used to obstruct the unused end of the cannula, while the other end was "able to receive a tube for supplying gases to the cannula." Flexicare Reply Br. at 17 (citing '902 Patent at 1:44–50 (referring to prior art reference to "Sandoz-Wander")). Flexicare further argues that amendments made by the patent applicant in the prosecution of the application leading to the '902 Patent in response to a particular prior art reference support limiting the '902 and '376 Patent claims to exclude embodiments involving simply a tube attached to one end of a two-entry cannula and a plug attached to obstruct the other end.

The Court tends to agree with Flexicare that the prior art references it cites clearly disclose a cannula configuration involving a tube attached to one end and a plug obstructing the other end, such that if the claims of the '902 and '376 only required limitations to that same configuration, they would likely be invalid. However, the issue before the Court is not one of patent invalidity, and Flexicare has not shown that the patent intrinsic record is ambiguous such that the patent claims must be construed to preserve their validity. Further, having determined, for example, that the claimed "nasal cannula assembly" requires a "gases flow manifold part" in all claims, it is not clear that the claims would indeed be anticipated by this prior art.

The Court is also not persuaded that the patent specification actually disparages Sandoz-Wander, as opposed to simply acknowledging it as a prior art reference. Flexicare's cites other portions of the patent specification for the proposition of prior art disparagement, but they do not clearly relate to Sandoz-Wander. See '902 Patent at 6:42–45 ("the nasal cannula assembly **20** and associated tubing **3** are relatively unobtrusive as the cannula **20** only requires a single horizontal side entry, not two entries

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

as that of the prior art."). And Flexicare has not adequately explained how the amendments to the '902 Patent claims in response to a particular prior art reference support limiting the specific term "nasal cannula assembly," particularly when the term already previously appeared in the claim and where there are not remarks in the prosecution history of the '902 Patent involving the reasons for amendment. For these reasons, Flexicare has not shown that its proposed limitation of "the assembly being without . . . a plug to seal an unused gas entry as described in the prior art" should be read into the '902 and '376 Patent claims.

The term "nasal cannula assembly" is construed as "a nasal cannula for providing gases to a patient having at least a face mount part and a gases flow manifold part, where the assembly can include one or more gas entry configurations for a gases supply tube or gases transportation pathway, but only one gas entry may be operable at any time."

### 7.   "removable gases flow manifold part" ('902 Patent, Claims 1, 10)

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| "a removable connecting structure between the face mount part and the gases transportation pathway having an entry and an outlet recess" | Plain and ordinary meaning for "removable"; needs no construction<br><br>"gases flow manifold" should be construed as: "a structure designed to attach to the face mount part and change the direction of gas flow received from a side gas entry into the nasal prongs of the cannula"<br><br>Amended proposal: "gases flow manifold" should be construed as "a connecting | "a removable connecting structure between the face mount part and the gases transportation pathway having an entry and an outlet recess" |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

| | | |
|---|---|---|
| | structure between the face mount part and the gases transportation pathway designed to attach to the face mount part and change the direction of gas flow received from a side gas entry recess through an outlet recess into the nasal prongs of the cannula" | |

In light of Flexicare's amended claim construction proposal, the parties' sole remaining dispute regarding the term "removable gases manifold part" is whether it is required to cause a change in "the direction of gas flow received from a side gas entry recess through an outlet recess into the nasal prongs of the cannula." Flexicare's proposal to include such a limitation is based on an extensive review of the disclosed embodiments in the patent specification. Of note, the patent specification itself does not discuss such a requirement. Instead, it is based on Flexicare's review of the patent figures and the design shown in them for the exemplary gases manifold parts. See, e.g. Flexicare Op. Br. at 24–26. Flexicare has not persuasively shown that it is appropriate to import a limitation based on the configurations shown in the specification's disclosed embodiments into this claim term, and the Court declines to import one on this basis.

Flexicare states that FPH "untethers the meaning of 'gases flow manifold' from the intrinsic record so it can be read on structures a POSITA [("Person of Ordinary Skill in the Art")] would *never* consider to be a 'gases flow manifold.'" Flexicare Resp. Br. at 22 (emphasis in original). However, Flexicare does not cite to an expert declaration explaining what a person of skill in the art would understand the term "gases flow manifold" to mean, including in the context of the '902 Patent.

The Court tends to agree with Flexicare that the letter and spirit of the patent intrinsic record support that the claimed "gases flow manifold part" contemplates a claim component that is more than the tubing for gas transportation itself or a simplistic connector piece attaching that tubing to a standard two-entry cannula. This may already

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

be reflected in the '902 Patent's requirements for a "face mount part," and a "complementary recess" in the face mount part that is "aligned with" an "open recess" in the gas flow manifold part in use, as well as a separate limitation for a "gases transportation pathway" compared to the "gas flow manifold part." However, the parties did not seek construction of these other claim terms or adequately provide their positions regarding them such that the Court could consider the issue. The fact that the parties did not opt to seek construction of these other terms at this stage is not a sufficient basis to support shoehorning a limitation regarding the direction of gas flow into a construction for the term "gases flow manifold part," where the intrinsic record does not address change in gas flow direction as a required feature of even the disclosed embodiments of the gases flow manifold part.

The term "removable gases flow manifold part" is construed consistent with the agreed portions of the parties' proposed constructions (i.e., coextensive with FPH's proposed construction) as "a removable connecting structure between the face mount part and the gases transportation pathway having an entry and an outlet recess."

### 8.   "condensation deflector within said internal cavity adjacent to said sensor mounting" ('979 Patent, Claim 1)

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| "condensation deflector positioned within the internal cavity and on the housing adjacent the sensor mounting" | Plain and ordinary meaning; no construction necessary. If construction is required, "condensation deflector" means "a structure for directing condensation at least partially away from the sensor"<br><br>"within said internal cavity adjacent to said sensor | No construction |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

| | | |
|---|---|---|
| | mounting" needs no construction. | |

Claim 1 of the '979 Patent states, <u>inter alia</u>,

1.    A breathing circuit apparatus for housing for a sensor . . .  comprising:
a housing,
an internal cavity within said housing,
. . .
a sensor mounting disposed within said housing . . . adapted such that
in use a sensor located in said sensor mounting being at least
partially within the path of said flow of gases, and
at least one <u>condensation deflector</u> within said internal cavity adjacent
to said sensor mounting, <u>said at least one condensation</u>
<u>deflector adapted to in use direct any condensation that forms</u>
<u>within said internal cavity at least partially away from a sensor</u>
which is located in said sensor mounting.

'979 Patent, Claim 1 (emphasis added).

In essence, FPH's position for the claimed "condensation deflector" term is that it is limited to covering components like those disclosed in the '979 Patent that form a ledge or other structure located above the sensor on the housing itself. For instance, FPH's construction would relate to the component labeled 102 in Figure 3 of the '979 Patent:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-00835 JVS (DFMx)                    Date  March 27, 2020

Title  Fisher and Paykel Healthcare Limited v. Flexicare Incorporated



**FIGURE 3**

'979 Patent, Figure 3 (annotations added). The '979 Patent explains that "[c]ondensate tends to originate on the upper surfaces (**106** in the elbow **19** in FIGS. **3** and **4**) where it gradually builds up as droplets before cascading down, sometimes onto the sensor **19**." Id. at 7:17–20. It states that one solution to this problem is to "direct[ ] condensate so that it falls away from the sensor **19**. This could be achieved by a shield, for example, a ledge **102** above the sensor **19** deflecting water droplets away from the sensor or contours on the duct's walls that guide water away." Id. at 7:31–35; see also id. at 8:8–10 (describing Figure 6 as showing a flow probe **202** with a "condensation shield **204** above it to deflect runoff.").

Flexicare's position is that the term "condensation deflector" is broader and also includes other structures, including structures described in the '949 Patent as "wing[s]" or "projecting tab[s]" on the sensors themselves. Id. at 5:61. For instance, Flexicare argues that the term "condensation deflector" encapsulates "projecting tab means" labeled 38 and 39 in Figure 3 of the '949 Patent. See id. at 5:63. The patent states that these tabs "reduce or eliminate the occurrence of liquid water accumulation on the sensors" because as "condensate drips from above on the sensor housing means it is caused to run away from a localised region of low surface tension in the vicinity of the line of contact of the projecting tab and the surface of the sensor housing" and towards

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

the stem **31** of the sensor. <u>Id.</u> at 5:57–60, 6:35–41. The projecting tab means can also be seen in Figure 1, where they are labeled as 37 and 38.



'949 Patent, Figure 1 (annotations added).

FPH notes that the '949 Patent uses the word "deflect" and its forms "only to describe the shield or ledge structure on the connector that is responsible for protecting the sensor from condensation." FPH Resp. Br. at 24 (citing '949 Patent at Abstract, 2:21–23, 2:36–43, 7:31–35, 7:58–60, 8:8–11). FPH further argues based on certain specification statements that deflecting condensation away from the sensor "involves preventing condensation from forming on the sensor in the first place, which the tabs do not do." <u>Id.</u>

However, the Court agrees with Flexicare that there is not sufficient basis to support limiting the meaning of this claim term in the manner FPH proposes. The claim language itself requires that the condensation deflector "direct[s] any condensation that forms within said internal cavity at least partially away from a sensor which is located in said sensor mounting." The additional limitations FPH would impose on both the plain meaning of the word "deflect" and the term "condensation deflector" are based on incorporating statements relating to preferred embodiments in the patent specification. FPH does not argue that the patent applicants lexicographically defined the word "condensation deflector" or otherwise expressed an intent to limit its meaning. In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

particular, FPH has not shown an intent to limit the meaning to require that the condensation deflector be located "on the housing." The claim language itself already specifies the location of the claimed condensation deflector as "within said internal cavity adjacent to said sensor mounting." Further, the Court notes that dependent claims of the '949 Patent specifically call out certain components, such as a ledge, as being the "condensation deflector." <u>See, e.g.</u> '979 Patent at Claim 14 ("said condensation deflector comprising at least a ledge formed in the periphery and extending into said third aperture, said ledge adapted such that in use said sensor mounting or a sensor mounted in said sensor mounting being below and thereby protected from condensation by, said ledge."). Claim differentiation supports Flexicare's broader proposal. The Court declines to incorporate an additional requirement about the location of the condensation deflector into the claims, and finds that the phrase should not be understood as narrowly as FPH proposes.

At the hearing, FPH argued that the claim's requirements regarding the location of the condensation deflector supported its position. Specifically, FPH argued that "<u>adjacent</u> to said sensor mounting" should not cover features located <u>through</u> or <u>inside</u> the sensor mounting. FPH noted the distinction in the claim language itself in describing a "sensor located in said sensor mounting" and a "condensation deflector within said internal cavity adjacent to said sensor mounting."

The parties' claim construction briefs did not present a dispute regarding the meaning of the term "adjacent." It does not appear appropriate to depart from the plain meaning of the term in the circumstances, <u>i.e.</u> as referring to items next to each other, including items that are or are not in contact. The Court does not agree that an item inside another item would be called "adjacent" to it, but it would likely be consistent to find that an item contacting another item, such as one item mounted on another item, could be called "adjacent." Beyond these clarifying remarks, the Court declines to determine on the current, limited record whether the projecting tabs or wings disclosed in the specification would fall into the former or latter category with respect to the claimed sensor mounting.

The Court finds that based on the claim language itself, no construction is necessary for the term "condensation deflector."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-00835 JVS (DFMx)              Date    March 27, 2020

Title    Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

9.    **"conduit preferably including a heating means to reduce condensation within said conduit" ('979 Patent, Claim 21)**

| FPH's Construction | Flexicare's Construction | Court's Construction |
|---|---|---|
| Means plus function term.<br><br>Function: reducing condensation within said conduit<br><br>Structure: "heater wire" and its equivalents | Not a claim limitation entitled to patentable weight or requiring construction as to: "preferably including a heating means to reduce condensation within said conduit"<br><br>If construed, means plus function.<br><br>Function: reducing condensation within said conduit<br><br>Structure: heating wire or wall heater and equivalents | Not construed |

Flexicare argues that the Court should decide at the claim construction stage that the term "conduit preferably including a heating means to reduce condensation within said conduit" is not entitled to patentable weight and should not construe the term.  FPH argues that "[i]t is improper at this stage to consider Flexicare's argument . . . because that issue is one of validity, not claim construction." FPH Resp. Br. at 24. FPH, however, does not dispute that Claim 21 includes an optional and permissive phrase "preferably including." FPH also fails to cite any legal authority for its argument that the issue is limited to the context of patent validity.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 19-00835 JVS (DFMx) | Date | March 27, 2020 |
|---|---|---|---|

| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated |
|---|---|

FPH notes that Flexicare's cited case in re Johnston involved an appeal from the Board of Patent Appeals regarding an issue of patent validity. 435 F.3d 1381 (Fed. Cir. 2006). However, in re Johnston does not limit its statements regarding the weight of optional claim limitations to the invalidity context. See id. at 1384. In re Johnston considered a dependent claim that used the phrase "said wall may be smooth." The Federal Circuit stated, "[a]s a matter of linguistic precision, optional elements do not narrow the claim because they can always be omitted." Id.

Other district courts have considered in re Johnston in the claim construction context and, moreover, in the patent infringement context. For instance, in Cadence Pharm., Inc. v. Exela Pharma Scis., LLC, No. CV 11-733-LPS, 2013 WL 11083853, at *20 (D. Del. Nov. 14, 2013) the court considered an optional step of adding an antioxidant in the asserted patent claim and found, "[b]ecause the step of adding an antioxidant is optional, it makes no difference when that step is performed. For purposes of claim scope, it is as if the optional step does not exist." Id. (emphasis added). The court found on that basis that "[t]he addition of an antioxidant during [the accused infringer's] manufacturing process is immaterial to the infringement analysis." Id. Other courts have similarly considered the issue in the claim construction context. In re OxyContin Antitrust Litig., No. 04 MD. 1603 SHS, 2014 WL 2198590, at *16 (S.D.N.Y. May 27, 2014).

The Court agrees with these courts in finding that where, as here, FPH does not reasonably dispute that the phrase "preferably including" is an optional, permissive phrase, "for purposes of claim scope, it is as if the optional step does not exist." See Cadence Pharm., 2013 WL 11083853, at *20. The fact that the term was discussed during prosecution history does not persuade the Court otherwise. The Court declines to construe the term "conduit preferably including a heating means to reduce condensation within said conduit."[4]

## IV. CONCLUSION

---

[4] The Court notes that if it were to construe the term, it would agree with FPH that a wall heater does not constitute a corresponding structure for the claim phrase "means to reduce condensation within said conduit."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-00835 JVS (DFMx)          Date     March 27, 2020

Title       Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

The disputed terms are construed as follows:

| Claim Term | Court's Construction |
|---|---|
| "breathable hydrophilic thermoplastic material" ('174 Patent, Claims 1, 13, 24) | "a hydrophilic thermoplastic material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases" |
| "semipermeable material" ('017 Patent, Claims 1, 12) | "a material that allows the passage of water vapor without allowing the passage of liquid water or respiratory gases" |
| "material" ('174 Patent, Claims 1, 13, 24) | No construction |
| "without allowing the passage of liquid water or respiratory gases" ('366 Patent, Claim 1; '324 Patent, Claim 1) | "without allowing the [passage]/[transmission] of any measurable amount of liquid water or respiratory gases when the claimed breathing tube, conduit, or circuit is in use" |
| "without allowing the transmission of liquid water or respiratory gases" ('891 Patent, Claim 1) | "without allowing more than the de minimis transmission of liquid water or respiratory gases" |
| "expiratory limb" ('814 Patent, Claims 1, 20; '366 Patent, Claim 1; '017 Patent, Claim 1; '324 Patent, Claim 2) | "tubing portion that connects the patient interface component to another piece of equipment to provide a conduit for directing expired air away from the patient and toward the other piece of equipment" |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-00835 JVS (DFMx)                    Date    March 27, 2020

Title        Fisher and Paykel Healthcare Limited v. Flexicare Incorporated

| | |
|---|---|
| | "expiratory limb" in the preamble of Claim 1 of the '017 Patent is found limiting and in the preamble of Claim 1 of the '814 Patent is not found limiting. |
| "nasal cannula assembly" ('902 Patent, Claims 1, 10; '376 Patent, Claims 1, 13) | "a nasal cannula for providing gases to a patient having at least a face mount part and a gases flow manifold part, where the assembly can include one or more gas entry configurations for a gases supply tube or gases transportation pathway, but only one gas entry may be operable at any time" |
| "removable gases flow manifold party" ('902 Patent, Claims 1, 10) | "a removable connecting structure between the face mount part and the gases transportation pathway having an entry and an outlet recess" |
| "condensation deflector within said internal cavity adjacent to said sensor mounting" ('979 Patent, Claim 1) | No construction |
| "conduit preferably including a heating means to reduce condensation within said conduit" ('979 Patent, Claim 21) | Not construed |

**IT IS SO ORDERED.**

_____ : ___0___

Initials of Preparer    lmb