UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SA CV 19-00835-JVS (DFMx) | | Date: | September 28, 2020 |
|---|---|---|---|---|
| Title | Fisher and Paykel Healthcare Limited v. Flexicare Incorporated | | | |

| Present: The Honorable | Douglas F. McCormick, United States Magistrate Judge |
|---|---|
| Nancy Boehme | Not Present |
| Deputy Clerk | Court Reporter |
| Attorney(s) for Plaintiff(s): | Attorney(s) for Defendant(s): |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order re: Motion to Compel (Dkt. 180)

Before the Court is a motion to compel documents filed by Plaintiff Fisher & Paykel Healthcare Limited ("FPH"). FPH and Defendants Flexicare Incorporated, Flexicare Medical Limited, and Flexicare (Group) Limited ("Flexicare") have submitted a Joint Stipulation. See Dkt. 180 ("JS"). FPH filed a supplemental memorandum (Dkt. 195), as did Flexicare (Dkt. 199). The Court issued a tentative ruling and held a telephonic hearing with the parties. The Court now DENIES the motion for the reasons set forth below. The parties are encouraged to read the order carefully as the final version may differ from the tentative rulings.

I.   BACKGROUND

This dispute concerns three documents that were produced and subsequently clawed back by Flexicare. Two of the documents (FLEX082072-73 and FLEX082075-76) are emails between three Flexicare executives: Ghassem Poormand, Khashaya Poormand, and Shaz Poormand.[1] The emails concern testing of the water absorption properties of Flexicare's accused VentiMyst products. The third document (FLEX082074) is a spreadsheet showing the results of that testing.

FPH questioned Ghassem about FLEX082075-76, identified as Exhibit 95, at his July 29, 2020 deposition. Flexicare did not immediately object to the document. After about twenty minutes, Flexicare's counsel stated, "we are going to claw this document back as privileged, and,

---

[1] To avoid confusion, the Court refers to them by their first names. The Court reviewed the documents in camera but does not describe them in detail here to avoid sealing this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

the testimony related to it is going to be designated as calling for testimony pertaining to privileged communications." The next day, Flexicare clawed back FLEX082072-76 and Exhibit 95 under Paragraph 20 of the Protective Order. See Dkt. 46.

FPH argues that the documents are not subject to the attorney-client privilege or work-product doctrine, and, to the extent they are, any such privilege was waived.

## II. ATTORNEY-CLIENT PRIVILEGE

### A. Law

Federal privilege law applies in this federal question case. The attorney-client privilege exists where: "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser (8) unless the protection be waived." United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011). The privilege is narrowly and strictly construed and the party asserting it bears the burden of proving that it applies. See id.

The documents in dispute are between three nonlegal employees. The attorney-client privilege may attach to communications between nonlegal employees where (1) "the employees discuss or transmit legal advice given by counsel" and (2) "an employee discusses her intent to seek legal advice about a particular issue." United States v. ChevronTexaco Corp., 241 F.Supp.2d 1065, 1077 (N.D. Cal. 2002); see also AT&T Corp. v. Microsoft Corp., No. 02-0164, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("Communications between non-lawyer employees about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege.").

### B. Analysis

Flexicare asserts that the documents contain both discussions of legal advice given by counsel and its executives' intent to seek legal advice on particular issues. FPH responds that the documents relay factual and technical information between nonlegal employees. In support, both parties rely heavily on Datel Holdings Ltd. v. Microsoft Corp., No. 09-5535, 2011 WL 866993 (N.D. Cal. Mar. 11, 2011) and Dolby Labs. Licensing Corp. v. Adobe Inc., 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019), two cases that deserve extended discussion.

Datel was also a dispute about the production of an email chain between nonlegal employees. The defendant's attorney made an oral request to an employee to investigate whether the plaintiff had infringed its intellectual property rights and to "enlist other employees with relevant technical expertise." 2011 WL 866993, at *6. That employee then started an email chain with other nonlegal employees, later testifying that the investigation's purpose was to understand

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

how the plaintiff's alleged infringing technology worked. See id. The court determined that the original email was privileged because it transmitted legal advice from the attorney, but the remaining emails on the chain were not privileged because they only contained discussions about the technical aspects of testing the allegedly infringing product. See id. The court noted that there were no communications with lawyers in the email chain nor any further reference to legal advice about the plaintiff. See id. Additionally, there was no showing that the results of the investigation were ever conveyed to counsel. See id. "Instead, the email chain contains communications between employees about what the computer testing revealed, and does not relate to transmission of legal advice." Id.

In Dolby, several of the disputed communications involved communications between defendant's nonlegal employees. For example, defendant argued that Log Entry No. 52, an email thread between its nonlegal employees, was protected because the communication directly related to a factfinding request from defendant's in-house counsel. See 402 F.Supp.3d at 870. The court disagreed: "Most of the chain appears to relay information relating to the integration of [plaintiff's] products into [defendant's] software. It does not convey any analysis or opinion and relates purely to underlying facts, which are not protected by attorney-client privilege. The chain is similar to the one at issue in Datel, where the emails between lawyers did not identify any transmission of legal advice. Other than a single reference to an audit in the initial email, the chain never mentions 'legal advice, lawyers, [or] litigation.'" Id. (citations omitted). The court also found that a different email was not privileged despite the fact that it contained more than just factual information: "None of the employees who were copied on the chain . . . submitted a declaration attesting to the content of the email or the source of the question copied in the email. . . . [Defendant's] evidence does not establish that the specific question was asked by an attorney for the purpose of providing legal advice." Id at 871.

Against this backdrop, the Court finds that the documents are not protected by the attorney-client privilege. Notably, unlike the parties claiming privilege in Datel and Dolby (and every other related case), Flexicare did not submit an attorney declaration attesting to the privileged nature of the documents. See Dolby, 402 F. Supp. 3d at 865 ("A cursory review of the case law demonstrates that attorney declarations generally are necessary to support the designating party's position in a dispute about attorney-client privilege."). Nor did Flexicare submit declarations from Ghassem, Kashaya, or Shaz, any one of whom could have attested that the emails came after a discussion with, or at the request of, legal counsel. Cf. id. (including declarations from employees who were participants in some of the contested communications); Datel, 2011 WL 866993, at *2 (same); AT&T, 2003 WL 21212614, at *4 (same). Flexicare's offer to submit declarations, after briefing has been completed, is too late.

Flexicare characterizes the emails as "discussions regarding noninfringement and invalidity positions," legal issues that its executives "had discussed with counsel, intended to further discuss with counsel, and ultimately discussed with counsel." JS at 30-31. In support, Flexicare points out that one of the emails mentions "Andrew," Flexicare's counsel. But Flexicare's interpretation is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

too generous. Almost nothing in the content of the emails indicates that they were for the purpose of transmitting or seeking legal advice. The emails are not directed to "Andrew," or any other lawyer. Instead, the emails are between Flexicare employees and mostly concern factual and technical information, as well as the personal opinions of non-attorneys. The fact that the employees used legal terms such as "defense" or "prior art" does not make the documents privileged. Additionally, the initial email suggested the group "discuss internally before communicating to the attorneys," which may cut against the notion that the discussion was at the behest of any attorney. Flexicare also makes no showing that the results of the testing were ever conveyed to counsel. See Datel, 2011 WL 866993, at *6 (finding email not privileged where there was "no showing that the results of the investigation were every conveyed to counsel").

Finally, though less significant, the non-reaction of Flexicare's counsel when presented with Exhibit 95 at Ghassem's deposition casts doubt on Flexicare's position. Despite the reference to "Andrew," Flexicare's counsel, who is presumably familiar with the facts of this case, could not identify the document as a privileged document. See Oracle Am., Inc. v. Google, Inc., No. 10-3561, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) (fact that defendant's lead counsel could not identify document as privileged, when stripped of its boilerplate, was another reason to find that privilege did not apply).

### III. WORK-PRODUCT DOCTRINE

#### A. Law

To qualify for work-product protection, materials must "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." Richey, 632 F.3d at 567 (citation omitted). Unlike the attorney-client privilege, the work product doctrine may be overcome by a party's showing of "need and undue hardship." In re Seagate Tech., LLC, 497 F.3d at 1375 (citing Fed. R. Civ. P. 26(b)(3)). The degree of showing required, however, depends on whether the sought-after material "is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not." Id. (citations omitted). Factual materials simply require a demonstration of "substantial need and undue hardship," while materials reflecting mental processes receive greater, "nearly absolute" protection. Id. (citations omitted).

#### B. Analysis

FPH argues that the documents are not subject to work-product protection because they were not "created for Flexicare's attorney." JS at 18. But counsel's lack of involvement in preparing the documents is not dispositive; a party can create work-product so long as the materials are prepared for litigation purposes. See Caremark, Inc. v. Affiliated Computer Servs, Inc., 195 F.R.D. 610, 615 (N.D. Ill. 2000) ("[M]aterials prepared in anticipation of litigation by any representative of the client are protected, regardless of whether the representative is acting for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

the lawyer."). However, the "involvement of the attorneys should be considered as part of the 'anticipation of litigation' prong of the tests." Largan Precision Co., Ltd. v. Genius Elec. Optical Co., 13-2502, 2015 WL 124557, at *5 (N.D. Cal. Jan. 8, 2015). As another district court has persuasively held:

> [T]he degree to which counsel is involved in creating the document bears directly on whether the document was prepared in anticipation of litigation. This relationship can be thought of as a sliding scale, whereby a party's burden to demonstrate a document's litigious purpose increases—all other things being equal—as attorney involvement in creating the document decreases. This simple principle recognizes the reality that attorneys are the ones who actually litigate cases, and whether or not a company involves attorneys in creating a document is a telling indication about whether the document was prepared in anticipation of litigation.

United States v. ISS Marine Servs., Inc., 905 F.Supp.2d 121, 134-35 & n.8 (D.D.C. 2012) (collecting authorities); see also Visa U.S.A., Inc. v. First Data Corp., No. 02-1786, 2004 WL 1878209, at *7 (N.D. Cal. Aug. 23, 2004) (holding that the court's conclusion that third-party consultant's analyses were not prepared "because of impending litigation" was "underscored" by the fact that consultant was not retained by counsel).

Accordingly, the Court turns to that part of the analysis. In evaluating whether documents qualify for work product protection, the Ninth Circuit applies the "because of" standard. In re Grand Jury Subpoena, 357 F.3d at 900, 908 (9th Cir. 2004). "The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" Id. (citation omitted).

On March 11, 2019, FPH sent letters to Flexicare in the US and UK accusing it of infringement of various US and European patents, including the patents asserted in this case and the ongoing UK litigation. In response, Flexicare engaged law firms in the US and UK. On March 26, Flexicare responded, asking FPH to identify allegedly infringing claims. On March 29, FPH responded, directing Flexicare "[a]s a courtesy" to "at least Claim 1 of each of the patents as examples." On April 6 and 7, the disputed emails and related attachment were sent. On April 15, Flexicare sent another letter, providing more detailed explanations for why it did not infringe FPH's patents, including a response similar in subject matter to the April 6 and 7 emails. On May 3, 2019, FPH filed the instant suit.

The Court finds that Flexicare has met its burden to show that work-product protection applies. As Flexicare argues, the context of the documents is key. The emails and test information were sent on April 6 and 7, 2019, after Flexicare had received a notice letter and retained counsel,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

and a week before Flexicare's lawyers in the US and UK sent substantive responses to FPH's infringement allegations. The emails discuss preliminary and rudimentary testing that, given the circumstances, was performed as a direct result of FPH's infringement allegations. See Dolby, 402 F.Supp.3d at 869 (concluding that work-product protection applied to documents that contained indications that they were prepared in direct response to the subject matter of the lawsuit). They reference a Flexicare attorney and state that "we can discuss this internally before communicating to the attorneys." The emails also discuss strategy, as well as issues that could arise in patent litigation with FPH, such as prior art. Taken together, Flexicare has persuaded the Court that the documents "can fairly be said to have been prepared or obtained because of the prospect of litigation." Richey, 632 F.3d at 568.

During the hearing, FPH made the non-controversial point that a notice letter alone does not create a reasonable anticipation of litigation. But as set out above, FPH sent numerous cease-and-desist letters to Flexicare in the US and UK and to its US distributor less than four weeks prior to the emails and testing in question. The letters alleged Flexicare infringed FPH's patents and instructed Flexicare to cease all infringing activities or face litigation. True to its word, FPH did file suit less than a month after the disputed documents were created. When considered alongside the content of the documents, the Court finds that Flexicare could reasonably anticipate suit. Compare Largan, 2015 WL 124557, at *6-*7 (finding documents were not created because of the prospect of litigation where parties were focused on a "business resolution" of the dispute and plaintiff had still not filed suit on patents named in 2011 notice letter).

FPH argues that even if the documents are work product, they have demonstrated a substantial need and an inability to procure equivalent information without undue hardship. The Court does not agree. FPH states that whether liquid water passes through the expiratory limb of the accused VentiMyst products is a "critical issue" in this case because the asserted claims "cover expiratory breathing circuit limbs made of a material that allows the passage of water vapor but does not allow the passage of liquid water." As Flexicare points out, however, FPH can perform its own testing on the accused products and is likewise free to present the results of that testing through expert discovery. See AT&T, 2003 WL 21212614, at *7 ("The test is not only relevancy, but that there are no other available means by which to secure the same information."). The accused products or testing materials are not in the exclusive custody of Flexicare. In a short paragraph at the end of its briefing, FPH suggests that contradictions between the documents and Flexicare's non-infringement defense are helpful to demonstrate willfulness. But FPH does not explain further and provides no legal authority to support that proposition. The Court will not eviscerate work product protection on the back of such an underdeveloped argument for substantial need.

    **IV.   WAIVER**

Finally, FPH argues that Flexicare waived attorney-client privilege and work-product protection because it did not promptly take reasonable steps to rectify the error when it permitted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Ghassem to testify for more than twenty minutes about Exhibit 95 before any privilege objection was made.

    A. <u>Law</u>

The disclosure of a privileged document normally operates as a waiver unless three conditions are satisfied: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). Flexicare, the disclosing party, has the burden of proving each element has been met. Here, only the third element of Rule 502(b) is at issue.

    B. <u>Analysis</u>

The Court has reviewed the numerous cases cited by each side and concludes that no waiver occurred. FPH relies heavily on <u>Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP</u>, in which the court stated, "if a privileged document is used at a deposition, and the privilege holder fails to object <u>immediately</u>, the privilege is waived." No. 06-2804, 2010 WL 275083, at *5 (S.D. Cal. Jan 13, 2010) (emphasis added). The Court does not understand the <u>Luna</u> court's use of "immediately" to mean "instantaneously," given its own procedural posture as well as the cases it relies on. <u>See id.</u> (finding waiver where counsel failed to object to the use of the allegedly privileged documents during the entire deposition), citing <u>Brandon v. D.R. Horton, Inc.</u>, 2008 WL 2096883, at *3 (S.D. Cal. May 16, 2008) (finding waiver where counsel failed to assert the privilege during the entire deposition); <u>Multiquip, Inc. v. Water Mgmt. Sys. LLC</u>, 2009 WL 4261214 (D. Id. Nov. 23, 2009) (finding no waiver where counsel asserted the privilege "almost within the hour" upon discovering the inadvertent production). Given the realities of e-discovery, especially in a large patent case such as this, the Court finds that Flexicare's counsel's objection—twenty minutes into the deposition—"promptly took reasonable steps to rectify" the inadvertent production. <u>See</u> <u>Valenzuela v. Union Pac. R.R. Co.</u>, 2016 WL 7385037 (D. Az. Dec. 21, 2016) (finding counsel promptly objected when exhibits at issue were used in morning session and counsel asserted privilege after lunch at same deposition). Finally, the Court finds that Flexicare's counsel's statement that they would "claw this document back as privileged" was sufficient to cover work product protection as well. <u>See</u> <u>Datel</u>, 2011 WL 866993, at *7 (explaining that defendant's failure to assert the work product protection "might not by itself be sufficient to waive the privilege, in light of the common, albeit imprecise, practice of using the term 'privilege' as shorthand for work product protection as well as the attorney-client privilege").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Accordingly, FPH's Motion to Compel is DENIED.[2]

---

[2] Notwithstanding the Court's decision to deny the motion, an award of attorney's fees to Flexicare is not warranted. The Court does not agree with Flexicare that "[t]his is not a close call." In fact the Court has disagreed with Flexicare's assertion that these documents are attorney-client privileged.